**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 20 2013, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**KELLY A. KELLY**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| EFREN RADILLO DIAZ, | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | )   No. 20A05-1209-PC-458 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Respondent. | ) |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No.  20C01-0407-FA-88
Cause No.  20C01-0701-PC-3

**February 20, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Efren Radillo Diaz ("Diaz"), an illegal alien who at the time of the relevant offenses spoke only Spanish, pled guilty to two counts of Dealing in Methamphetamine, as Class A felonies.[1] After a direct appeal, this Court ordered his sentences run concurrently.

After resentencing upon remand, Diaz pursued post-conviction relief on the bases that he did not knowingly and intelligently plead guilty to one of the two charges as a result of poor translation of the proceedings and ineffective assistance of trial counsel. The post-conviction court heard testimony and denied relief, as did this Court. The Indiana Supreme Court granted transfer and ordered that the post-conviction court upon remand commission translations of Diaz's guilty plea and sentencing hearings and review Diaz's petition for post-conviction relief.

The post-conviction court commissioned and reviewed the transcripts and received argument of counsel, after which it again denied Diaz's petition for post-conviction relief. Diaz again appeals.

We affirm.

**Issues**

Diaz raises two issues for our review, which we restate as whether the post-conviction court erroneously denied his petition for relief because:

---

[1] Ind. Code §§ 35-48-4-1(1) & (2) (2005). Specifically, Diaz was charged for dealing in methamphetamine and possession of methamphetamine with intent to deliver the same. The offense of Dealing in Methamphetamine was subsequently recodified by our legislature effective July 1, 2006. P.L. 151-2006 §§ 22 & 23.

I.   He did not knowingly, intelligently, and voluntarily plead guilty to the two counts in this case; and

II.  His trial counsel, after learning that Diaz was unsure whether he had pled guilty to one or two offenses, was ineffective for failing to take appropriate action to clarify Diaz's intentions or seek the vacation of Diaz's plea.

**Facts and Procedural History**

We take a portion of our statement of the facts and procedural history from the Indiana Supreme Court's opinion in Diaz v. State, 934 N.E.2d 1089 (Ind. 2010), vacating Cause No. 20C01-0407-FA-88, Slip Op. (Ind. Ct. App. 2009):

Efren Diaz was born in Mexico and his native language is Spanish. Diaz moved to the United States in 2000 and lived in the State of Washington, where he worked as a day laborer. In 2004, he moved to Elkhart County, Indiana in search of employment. In June 2004, Diaz was arrested for possessing methamphetamine weighing 11,511 grams (almost 26 pounds) and for dealing. Diaz indicated that he believed the drugs found in his possession were worth about $120,000. He was the subject of an investigation suggesting a multi-million dollar interstate methamphetamine operation. The chief investigator reportedly valued the methamphetamine and cutting agent recovered at over $2 million.

On July 7, 2004, the State charged Diaz with (1) possession of methamphetamine weighing three grams or more with intent to deliver and (2) dealing in methamphetamine weighing three grams or more, both counts as class A felonies under Indiana Code § 35–48–4–1 (2008). After his arrest, Diaz hired attorney David Newman [hereinafter, "Newman"] to represent him. Newman's firm employed an interpreter to help them in their regular representation of Spanish-speaking clients. Newman met with Diaz in jail on several occasions. The two communicated through the firm's interpreter, Josephine Navarro [hereinafter, "Navarro"]. Navarro had previously worked helping with translations in the traffic and misdemeanor courts at the St. Joseph County Courthouse, but she did not have any formal training on how to interpret.

Beatrice Lara [hereinafter, "Lara"] served as the interpreter for the guilty plea hearing under an appointment by the court. She provided the court and Diaz

3

with Spanish interpreting of the proceeding. Lara proffered her qualifications to the trial court, explaining her native language was English, that she learned Spanish from her father, and that she had spoken Spanish while staying in Mexico for a few months. Lara had translated for courts, "about 20 times" in the last two or three years.

Diaz pled guilty to the two charges on January 14, 2005, in exchange for the State's agreement not to file an additional charge for conspiracy or additional charges for another delivery of methamphetamine, or for the various drug paraphernalia recovered during the multi-state investigation (things like cutting agents, scales, and packaging materials).

A few weeks after pleading guilty, Diaz sent his attorney a letter with the aid of other inmates. The letter, dated February 8, 2005, stated that Diaz had questions concerning the content of his plea as reported in the Elkhart Truth newspaper and that he thought that he and his attorney "had problems with language interpretation." The following day, Diaz gave a proffer to federal authorities in hopes of receiving a better recommendation from the State at sentencing.

On March 24, 2005, the court sentenced Diaz to 30 years for possession and 20 years for dealing, to be served consecutively for an aggregate of 50 years.

On direct appeal, the Court of Appeals found need for clarification of the sentencing order. Diaz v. State, 839 N.E.2d 1277 (Ind. Ct. App. 2005). On remand the trial court ordered the sentences to be served concurrently.

Id. at 1091-92 (record citations and footnotes omitted).

After this, Diaz filed a petition for post-conviction relief on January 26, 2007. In the petition, he claimed that he did not knowingly and intelligently enter his guilty plea and that he had received ineffective assistance of trial counsel. On January 17, 2008, Diaz amended his petition to allege that the guilty plea hearing had not been properly translated, and that this led to Diaz's plea.

Evidentiary hearings were conducted on March 26 and October 7, 2008. Prior to the hearings, Christina Courtright ("Courtright") had been retained by Diaz's post-conviction

counsel to review the quality of the translation Lara had provided to Diaz during his guilty plea hearing. Courtright concluded Lara's translation work had substantial shortcomings, including significant mistranslations, separate conversations with Diaz, and instructions to Diaz that he reply "yes" to questions from the trial court. During the evidentiary hearing, Courtright provided testimony concerning her opinions to the post-conviction court, and Diaz's post-conviction counsel sought to introduce into evidence a chart summarizing Courtright's conclusions. The post-conviction court ruled the chart inadmissible.

Also during the evidentiary hearing, Newman, who served as Diaz's trial counsel, provided testimony concerning his and his secretary's communications with Diaz about Diaz's guilty plea. As our supreme court observed, "Newman did not recall Diaz expressing any concerns regarding his plea during their meetings." Id. at 1093. One of these meetings occurred only a day after the letter Diaz sent to Newman concerning the February 8, 2005 article in the Elkhart Truth newspaper about Diaz's plea.

Diaz also testified at the hearing. During his testimony, he indicated that he believed he understood Lara during his guilty plea hearing, but that his intent had been to plead guilty only to one of the two charges against him—the charge for Dealing in Methamphetamine (for which he received the shorter of the two sentences). Diaz testified that he was unaware of any concerns with either the work of Newman's secretary in providing translations to him, or the interpreter's work during his sentencing hearing.

On February 4, 2009, the post-conviction court entered findings and conclusions denying Diaz's petition. Diaz appealed, and a panel of this Court affirmed the post-

5

conviction court's decision. Diaz sought transfer from the Indiana Supreme Court; Diaz's petition for transfer was granted, and our opinion was vacated. Diaz, 934 N.E.2d at 1093.

In its decision on transfer, the Indiana Supreme Court reversed the trial court's denial of post-conviction relief. The court did not, however, conclude that Diaz was entitled to relief. Rather, the court concluded that Courtright's chart was properly admissible as a demonstrative exhibit necessary for properly conveying her opinions concerning the quality of Lara's interpreting work during Diaz's guilty plea hearing. The court went on to hold that the post-conviction court's review of Diaz's petition for relief required a determination concerning whether Diaz "was provided with accurate interpreting" and whether, taken with "evidence about what occurred during the guilty plea hearing, and during the sentencing hearing, and in his lawyer's office, and in writing," Diaz was entitled to post-conviction relief. Id. at 1096. The court therefore remanded the case for a new post-conviction hearing.

Upon remand, the parties agreed that, with the admissibility of Courtright's opinion and demonstrative exhibit determined by the Indiana Supreme Court's opinion on transfer, there was no additional evidence to submit for the post-conviction court's consideration. The parties therefore agreed to proceed with the case by submitting proposed findings of fact and conclusions of law to the post-conviction court. Diaz submitted his proposed findings and conclusions on April 17, 2012. The State filed its proposal on May 16, 2012, and Diaz filed responsive briefing on June 1, 2012.

On August 15, 2012, the post-conviction court entered its order, finding that Diaz had entered his guilty pleas knowingly and intelligently and that he had not received ineffective

assistance of counsel, and denied Diaz's petition. Diaz appeals.

**Discussion and Decision**

<u>Standard of Review</u>

Our standard of review in post-conviction proceedings is well-established.

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. <u>Conner v. State</u>, 711 N.E.2d 1238, 1245 (Ind. 1999). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. <u>Fisher v. State</u>, 810 N.E.2d 674, 679 (Ind. 2004). To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. <u>Graves v. State</u>, 823 N.E.2d 1193, 1197 (Ind. 2005). Where, as here, the post-conviction court enters findings and conclusions in accordance with Indiana Post–Conviction Rule (1)(6), we will reverse "upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." <u>Ben–Yisrayl v. State</u>, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted), <u>cert. denied</u>, 534 U.S. 830, 122 S.Ct. 73, 151 L.Ed.2d 38 (2001). Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law. <u>Miller v. State</u>, 702 N.E.2d 1053, 1058 (Ind. 1998).

<u>Hall v. State</u>, 849 N.E.2d 466, 468-69 (Ind. 2006).

Here, Diaz challenges his guilty plea on two grounds: first, that he did not knowingly and intelligently enter his plea because of poor translation during the guilty plea hearing; and second, that his trial counsel was ineffective for failing to take action to address his concerns with the plea after the <u>Elkhart Truth</u> newspaper reported that he had pleaded guilty to both Dealing in Methamphetamine and Possession of Methamphetamine counts, rather than a single count of Dealing. We address each of Diaz's contentions in turn.

7

<u>Translation of the Guilty Plea Hearing</u>

We first address Diaz's contention that his plea was not knowingly and intelligently entered because of the poor translation provided by the interpreter during his guilty plea hearing.

Whether a guilty plea is valid depends upon "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" <u>Diaz</u>, 934 N.E.2d at 1094 (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)). The Indiana Code provides that a court "shall not accept a plea of guilty … without first determining that the defendant" (1) understands the nature of the charges against him; (2) has been informed that certain due process rights will be waived by entering a plea; and (3) has been apprised of the maximum and minimum sentences associated with the offenses, as well as the possibilities of an increased sentence due to prior criminal conduct and the imposition of consecutive sentences. I.C. § 35-35-1-2(a). Any deviation from the requirements of the statute that does not violate a defendant's constitutional rights is not a basis for setting aside a guilty plea unless the defendant was prejudiced by that deviation. I.C. § 35-35-1-2(c); <u>Jackson v. State</u>, 676 N.E.2d 745, 753 (Ind. Ct. App. 1997), <u>trans. denied</u>. When reviewing a guilty plea, we look at all the evidence before the post-conviction court. <u>Moffitt v. State</u>, 817 N.E.2d 239, 249 (Ind. Ct. App. 2004), <u>trans. denied</u>. If there is evidence in the record to support the post-conviction court's determination that the defendant's plea was voluntary, we will not reverse the denial of relief on that ground. <u>Id.</u>

The Indiana Supreme Court has recognized in Diaz's case that "the court system is

difficult enough for native English speakers," and has "highlighted the importance of having qualified interpreters." Diaz, 934 N.E.2d at 1095 (citing Arrieta v. State, 878 N.E.2d 1238, 1241 (Ind. 2008)). "Having a capable interpreter is crucial when a defendant is entering a guilty plea," and the availability of a capable interpreter "would act to limit questions of the type that now surround Diaz's plea." Id. Yet our supreme court did not conclude that only the conduct of the plea hearing was relevant to a review of Diaz's claims upon remand; rather, the post-conviction court was instructed to look not only to the guilty plea hearing but also events "during the sentencing hearing, and in his lawyer's office, and in writing, and otherwise." Id. at 1096.

On appeal from the post-conviction court's denial of his petition upon remand from the Indiana Supreme Court, Diaz contends that he did not knowingly and intelligently enter his guilty plea because of the poor quality of the translation Lara provided during the guilty plea hearing. Specifically, Diaz argues that the interpreter's inability "to translate legal terms of art and legal concepts" rendered his plea void. (Appellant's Br. at 14.) Diaz notes that, among other deficiencies, Lara did not translate the phrase "right to a jury trial" in idiomatic Spanish, but rather used an incorrect Spanish word for "trial" and simply repeated the word "jury" in English. He thus contends that he cannot have knowingly and intelligently waived his due process rights because Lara did not convey to him proper advisements of those rights.

We do not agree. We acknowledge that the translation provided to Diaz during the plea hearing was of poor quality. However, the translation the post-conviction court commissioned of the guilty plea hearing establishes that Diaz was told that he was pleading

9

guilty to two counts, not one. After being informed of the elements of the charged offenses to which Diaz would be pleading guilty, Lara told Diaz during an advisement of the penalties associated with the charges, "'Each' (in English) charge that you have for I and II, are fifty years plus ten thousand…(inaudible)." (App. at 57.)

Later in the hearing, Lara translated the following:

[COURT:] All right, Mr. Radillo, do you understand that it is possible the sentences on your two cases could be consecutive?

\*\*\*

[TRANSLATION:] Do you understand you are going to jail for both charges…. (inaudible).

[DIAZ:] Yes.

(App. at 60.) Still later, the following exchange occurred:

[COURT:] Do you still want to plead guilty to these two crimes?

\*\*\*

[INTERPRETER:] Do you still want to say guilty of the charges?

[DIAZ:] Yes.

(App. at 63.) From these exchanges, it is clear that Diaz was made aware by the court on multiple occasions that he was pleading guilty to more than one charge.

Further, during the post-conviction evidentiary hearing, the State introduced testimony from Navarro, who worked as an assistant to Diaz's trial counsel, Newman, providing Spanish-to-English and English-to-Spanish translation services for counsel and Diaz. Navarro testified that she and Newman met with Diaz before the plea hearing and reviewed the plea agreement, with Navarro translating the terms of the agreement for Diaz and

10

facilitating questions and answers between Diaz and Newman. The plea agreement is clear in its statements that Diaz would be entering guilty pleas to both the Dealing in Methamphetamine and Possession of Methamphetamine charges, and that as a result of his pleas Diaz would also waive his right to a jury trial on the charges against him. And while Diaz testified that he had difficulty understanding Lara, who was unable to translate such key terms as "jury," he did not have difficulty or complaints about Navarro's translations.

We recognize the numerous defects in the translations provided during the guilty plea hearing, and the importance of assuring that proper translation is provided to non-English-speaking defendants in our criminal courts. In light of the evidence presented to the post-conviction court, however, we cannot conclude that the poor translation work during Diaz's plea hearing leads inevitably to a conclusion that the plea was not knowingly and intelligently given. We therefore affirm the post-conviction court's decision on the voluntariness of Diaz's plea.

## Ineffective Assistance of Counsel

Diaz also contends that Newman, his trial counsel, rendered ineffective assistance in this case. Specifically, Diaz argues that Newman "had a duty to ensure that the interpreter appointed by the court was qualified to provide an accurate translation of the proceedings" and "a continuing duty to ensure that Mr. Diaz understood the proceedings," but failed to uphold that duty. (Appellant's Br. at 16-17.)

A defendant who seeks post-conviction relief on a claim of ineffective assistance of counsel must show that "(1) the lawyer's performance fell below an 'objective standard of

11

reasonableness,' … and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Segura v. State, 749 N.E.2d 496, 501 (Ind. 2001) (quoting Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984)). The two prongs of the test are separate and independent inquiries. Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001). If a claim of ineffective assistance of counsel can be disposed of under the second prong of the test—the prejudice prong—"'that course should be followed.'" Id. (quoting Williams v. State, 706 N.E.2d 149, 154 (Ind. 1999)).

Where, as here, a defendant has entered a guilty plea and seeks to overturn it on the basis of ineffective assistance of trial counsel, we apply the standard set forth by our supreme court in Segura. There are two main categories of ineffective assistance of counsel in such circumstances. Maloney v. State, 872 N.E.2d 647, 650 (Ind. Ct. App. 2007) (citing Smith v. State, 770 N.E.2d 290, 295 (Ind. 2002)). The first category is where trial counsel fails to advise a defendant on an issue, and that failure impairs or overlooks a defense. Id. The second is where trial counsel fails to correctly advise the defendant of the penal consequences of a plea. Id.

Here, Diaz argues that Newman failed to respond appropriately to his letter concerning his confusion over the Elkhart Truth's report that he had pled guilty to two offenses. Diaz argues that "[d]espite the fact that counsel received notice twice … counsel failed to take an action to clarify the proceedings or try to withdraw the guilty plea." (Appellant's Br. at 17.) Diaz asserts this "falls below prevailing professional standards," and

12

the outcome "would have been different because Mr. Diaz would not have pled guilty had he understood the proceedings." (Appellant's Br. at 17.)

As our supreme court noted, Diaz's argument largely boils down to a contention that he intended to plead guilty only to the charge for Dealing in Methamphetamine, for which Diaz was sentenced to twenty years imprisonment, and not to the charge for Possession of Methamphetamine, for which he was sentenced to thirty years imprisonment. To the extent this argument fits into either of the categories set forth by Segura, because Diaz makes no claim that a defense was overlooked or impaired by counsel's conduct, his contention more closely adheres to the failure of trial counsel to properly advise Diaz as to the penal consequences of a guilty plea.

Again, we cannot agree with Diaz that the post-conviction court erroneously denied his petition for relief. Diaz argues that he did not understand his case because information "was translated so poorly" and other facts showed his "lack of understanding." (Appellant's Br. at 18.) Yet Diaz directs us to no authority that establishes that counsel is responsible for assuring the quality of a court-appointed interpreter's translation. Moreover, testimony from Navarro and Diaz himself during the post-conviction hearing indicates that the consequences of the plea agreement were explained to Diaz before he entered his plea and that Diaz understood this explanation. Nor does Diaz present anything beyond a bare assertion that he would not have pled guilty to the Possession of Methamphetamine charge to support his claim that he was prejudiced by counsel's alleged violation of professional standards.

Given this, we cannot conclude that the post-conviction court erred when it concluded

that Diaz was not entitled to relief as a result of his claim of ineffective assistance of counsel. We therefore affirm the post-conviction court's decision.

## Conclusion

While the translation work afforded to Diaz at his guilty plea hearing was deficient, the post-conviction court did not err when it concluded that the work of the interpreter did not render his plea involuntary. Nor did the post-conviction court err when it concluded that Diaz did not receive ineffective assistance of trial counsel.

Affirmed.

VAIDIK, J., and BROWN, J., concur.

14